

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

vs.

DALTON WILKE,

        Defendant.

DECISION AND ORDER
09-CR-6099 CJS
13-CV-6193 CJS

---

## INTRODUCTION

Dalton Wilke ("Wilke" or "Defendant"), acting as his own counsel, moves this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Motion to Vacate under 28 U.S.C. § 2255, Apr. 15, 2013, ECF No. 99. For the reasons stated below, the application is –.

## BACKGROUND

Wilke claims that his trial counsel, Donald Thompson, provided ineffective assistance, entitling him to sentence relief. Wilke is currently serving a term of 120 months in federal prison following convictions for utilizing a means and facility of interstate commerce to entice a minor to engage in sexual activity (18 U.S.C. § 2422(b)), receipt of child pornography (18 U.S.C. § 2252(a)(2)(A)), and possession of child pornography (18 U.S.C. § 2252(a)(5)(B)).

After reviewing the answer, transcripts filed in the case, and arguments submitted by Wilke, both in his initial motion, and in his reply, the Court concludes no evidentiary hearing is necessary to decide the application. Rule 8(a), Rules Governing Section 2255 Proceedings.

The procedural history of this case was accurately set forth in the Government's Response, ECF No. 101, and need not be repeated here in its entirety. It is sufficient to note the following:

> On February 18, 2010, the grand jury for the Western District of New York returned a Superseding Indictment charging Wilke with three violations of federal law, as well as a computer forfeiture allegation. Count 1 charged Wilke with utilizing a means and facility of interstate commerce to entice an individual he believed to be 15-years old to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Count 2 charged Wilke with the receipt of an item of child pornography on or before July 6, 2008, in violation of 18 U.S.C. § 2252A(2)(A). Count 3 charged Wilke with knowingly possessing a OneTouch external hard drive that contained child pornography on or before August 8, 2008, in violation of 18 U.S.C. § 2252A(2)(5)(B). On May 5, 2010, a jury found Wilke guilty of all three charges.
>
> On March 7, 2011, the district court sentenced Wilke to, *inter alia*, 120 months imprisonment on Count 1, 60 months imprisonment each on Counts 2 and 3, all counts to run concurrently. The district court also imposed concurrent 25-year terms of supervised release.
>
> The Judgment in a Criminal Case was entered on March 15, 2011. On March 21, 2011, Wilke entered a timely Notice of Appeal.
>
> The Second Circuit Court of Appeals affirmed Wilke's conviction on May 31, 2012. Certiorari was denied by the United States Supreme Court on October 1, 2012.

Government's Response at 1–2, Jul. 12, 2013, ECF No. 101. On April 9, 2013, Wilke, proceeding *pro se*, filed the instant Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. The motion states three grounds for Defendant's claim of ineffective counsel relating to: conflict of interest, entrapment, and defective indictment.

## STANDARD OF LAW

Section 2255 of Title 28 of the United States Code provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

## DISCUSSION

To establish ineffective assistance of counsel, a defendant must meet two requirements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted). When applying the first *Strickland* prong, courts must be

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,'" we must "consider the circumstances counsel

3

> faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S. Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008). With regard to alleged ineffectiveness of appellate counsel,

> it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).

As for the second prong of the *Strickland* test, to establish prejudice a defendant is

> required to show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors.

*Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005) (citations and internal quotation marks omitted). The strength of the government's case is relevant to whether a defendant suffered prejudice. *See, id.* ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus.") (citation omitted); *Rosario v. Ercole*, 601 F.3d 118, 136 (2d Cir. 2010) ("*Strickland* makes clear that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." 466 U.S. at 696, 104 S. Ct. 2052.") (Straub, J., concurring in part and dissenting in part).

4

The Court will now address Wilke's various claims.

### *Conflict of Interest*

Wilke's first argument is that his counsel was ineffective for requesting to withdraw from the case two weeks before trial and that his Sixth Amendment right to conflict-free counsel was thereby violated. Wilke contends that Thompson's attempt to withdraw from the case (supplemented by counsel's statement to the Court that "a wedge had been driven between him and his client") constitutes a conflict of interest and that the Court should have appointed separate counsel. Def's Mot. 2.[1] Wilke further asserts that the outcome of his case would have been different if this had not transpired, and that, as a result, counsel was ineffective.

Defendant does not point to any case law that defines "conflict of interest" for the purpose of appraising the effectiveness of counsel. The government, in its response to the petition, relies on *United States v. O'Neil*, in which the Second Circuit established that to prevail on a conflict of interest claim, the conflict must have culminated in a "lapse of representation." 118 F.3d 65, 71 (1997). Further, the *O'Neil* panel held that a conflict of interest is demonstrated "if during the course of representation, the defendants' [sic] interests do diverge with respect to a material factual or legal issue or to a course of action." *Id.* Wilke does not allege that there was any lapse in his representation; nor does he describe any manner in which his interests were subverted by his counsel.

---

[1] The Petition consists of a form petition, followed by a typewritten petition set out in the style of an appellate brief. This page number refers to the second part of the Petition, and uses Petitioner's page numbering.

5

Wilke's conflict of interest claim does not satisfy either prong of the *Strickland* test for determining that counsel was ineffective. He does not establish an actual conflict, nor does he claim that there was a lapse in representation. He does not posit that his counsel's performance fell below an objective professional standard of reasonableness. Moreover, he offers no evidence that his case would have concluded differently if not for his attorney's alleged error, but merely makes a conclusory statement to that effect in his petition. Accordingly, the Court finds that trial counsel was not ineffective as the result of a conflict of interest.

*Entrapment*

Wilke's second argument is that his counsel was ineffective for failing to raise the affirmative defense of entrapment. He claims that he had no predisposition to commit the crimes for which he was convicted and that he was induced to engage in such conduct by the government when it created an online profile purporting to be that of a man of eighteen years of age. He argues that the government "coerced him into a 'cybersex' chat circumstance." Def.'s Mot. 5.

A valid entrapment defense has two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). A defense of entrapment places the burden on the defendant to show by a preponderance of the evidence that the government induced him to commit the crime. *United States v. Brand*, 467 F.3d 179, 189 (2d Cir. 2006). Predisposition is the principle element of an entrapment defense and "focuses upon whether the defendant was an unwary

6

innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63. The government's showing of predisposition beyond a reasonable doubt defeats an entrapment defense even where inducement is shown. *Brand*, 476 F.3d at 189.

The government addresses the issue of predisposition by quoting Wilke's online chats with the undercover officer, posing as a child:

> The online chats, entered at trial as Trial Exhibits 4 through 13 demonstrate Wilke's willingness, even his eagerness, to engage in sexual conduct with a person he believed to be a 15 year old child without any need for government inducement. Trial Exhibit 4 shows that the undercover specifically told Wilke he was only 15 years old within 7 minutes of the defendant initially contacting the child online (at 17:13:50). Within a minute after that, Wilke asked the child "you (sic) not a cop?" (at 17:14:45). Then a minute later Wilke engaged the child in discussions involving "blowjobs" (at 17:15:26) and asked him "so you dont mind meeting a guy my age?" (at 17:17:27). Then Wilke pressed the child to meet in person less than 10 minutes after first learning the child's age. Clearly, Wilke was hungry to meet the child without any inducement from the government, and moreover, knew exactly why he wanted them to get together.
>
> These same chat exhibits entered at trial show that Wilke was told on no fewer than 3 occasions about the child's age (Trial Exhibit 4 at 17:13:50, Trial Exhibit 5 at 12:50:20, and Trial Exhibit 8 at 11:00:18). The evidence shows that Wilke acknowledged that the child was only 15, and in Exhibit 5, responded "you dont have to say it again", (at 12:50:35) "its all good" (at 12:50:39), and "im ok with it if you are" (at 12:50:53). In that same conversation, Wilke told the child "you better erase you [sic] chat history so your mom doesnt read this" (at 12:37:12). In Trial Exhibit 8, Wilke again talked to the child about meeting, this time saying that he was looking forward to it "sence [sic] we first talked" (at 11:08:56) and then told the child "we just have to be carefull [sic]" (at 11:09:57) because "I don't want to go to jail" (at 11:10:05).

Government's Response at 7–8. The government notes that it never initiated any sexually explicit conversations with Wilke and that it was Wilke who was the sexual

7

aggressor; he repeatedly made explicit propositions and suggested almost immediately that they meet in person. There is no evidence that Wilke was forced or coerced into meeting a minor for sex.

The Court agrees that Wilke's online conversations demonstrate that he was predisposed to commit the charged offenses. This, as the government points out, is also evident from the list of search terms forensically removed from Wilke's personal computer. He actively sought pornographic materials depicting "boy bondage," "gay older younger," "gay pre teen," "pre teen," "gay underage," and "gay youth" before contact with the undercover officer. Government's Response at 10. This evidence demonstrates Wilke's pre-existing sexual interest in young boys and inclination to actively seek pornographic materials featuring male children in flagrant disregard of the law. Wilke's willingness to initiate a sexual encounter with the undercover officer was hardly out of character and clearly demonstrates a predisposition for sex crimes for which he was convicted.

In Wilke's Reply to the Government's Response, ECF No. 104, Wilke claims that there were previous chats between himself and the undercover officer in which the officer told Wilke that he was eighteen years old. Def.'s Reply at 4. The government does not appear to have preserved these chats, but it is clear from subsequent chats with Wilke that he believed the person with whom he was communicating to be a 15 year old boy and that he pressed the supposed child repeatedly to meet him in person. Government's Response at 8. Indeed, Wilke does not claim that he continued to believe that the child was eighteen when arranging to meet

8

him; he alleges only that the undercover officer had initially represented himself as an eighteen-year-old male.

Furthermore, the objective test referenced in Wilke's Reply is a matter of substantive New York law and irrelevant here. Similarly, the five-factor test for determining predisposition in *United States v. Tom*, 330 F.3d 83 (1st Cir. 2003), upon which Wilke relies has not been applied in the Second Circuit. *See United States v. Cromitie*, 727 F.3d 194, 205 (2013).) And finally, his allegation that the undercover officer initiated contact on Silverdaddies.com is irrelevant—Wilke does not allege that the officer made the initial suggestion that he engage in the proscribed conduct with someone he believed to be a child. The simple fact of contact does not equate to an invitation to engage in sex.

Defendant has not properly alleged that he was induced to commit the crime with which he is charged; nor does he successfully establish that he lacked predisposition to carry out the same. Since Defendant's entrapment claim is unsubstantiated, there is no evidence that his counsel unreasonably failed to raise an entrapment defense or that his case would have reached a different conclusion if it had been raised. Defendant fails to refute the evidence that he was made aware of the purported child's age (15), and that he continued to elicit sexual activity with a person he believed to be a child after being made aware of his status as a minor. Therefore, the Court finds counsel was not ineffective for failing to raise entrapment as an affirmative defense.

*Defective Indictment*

Third, Wilke maintains that his counsel was ineffective for failing to challenge the indictment. Defendant alleges that he could not have been charged with violating New York Penal Law § 130.40, which requires "oral sexual conduct or anal sexual conduct," because he never had any physical contact with the purported child. NY CLS Penal § 130.40.

As the government notes in its response, Wilke is simply incorrect in his suggestion that his counsel did not challenge the superseding indictment. Mr. Thompson filed a motion for dismissal of the indictment based upon defects in the grand jury proceedings and insufficiency of evidence. Motion to Dismiss, Feb. 28, 2010, ECF No. 53. Counsel failed to prevail in his motion, despite directly challenging the indictment on legal and factual bases. However, this does not mean that counsel's assistance was ineffective.

Moreover, the government is correct in pointing out that 28 U.S.C. § 2422(b) imposes criminal liability even in cases where there was an attempt but no completion of the crime when the crime alleged involves knowingly persuading, inducing, enticing, or coercing "any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." *Id*. In his online chats with the undercover officer, Wilke repeatedly and explicitly references acts of oral and anal sexual conduct, making it abundantly clear that he intended to engage in this conduct with someone he believed to be a minor. Government's Response at pp. 12-13.

Wilke does not offer any evidence or theory in his motion concerning how his case would have concluded differently if his counsel had raised an objection to

10

the indictment on the grounds proposed, but merely makes a conclusory statement to that effect. He also offers no evidence that his counsel's performance "fell below an objective standard of reasonableness under the prevailing professional norms." *Vadas*, 527 F.3d at 20. Thus, the Court finds counsel was not ineffective for failure to challenge the superseding indictment.

## CONCLUSION

The Court has considered all of Defendant's arguments, including those raised in his untimely amended submissions. To the extent they are not specifically discussed above, they lack merit. Defendant has not established that his counsel's performance was deficient as assessed against an objective standard of reasonableness under prevailing professional norms; nor has he established that his criminal case would have concluded differently if not for counsel's alleged incompetence. The petition and the record conclusively show that the defendant is not entitled to relief. Defendant's application under 28 U.S.C. § 2255, ECF No. 99, is denied.

The Court hereby certifies, pursuant to 28 U.S.C. § 2253, that any appeal from this Decision and Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 22 of the Federal Rules of Appellate Procedure.

Further, the Court denies the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253 because Wilke has not made a substantial showing of the denial of a constitutional right.

IT IS SO ORDERED.

DATED: July 19, 2017
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge